IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00379-WYD-BNB

DAVID K. JENNER, and
MICHAEL O. BACKUS,

Plaintiffs,

v.

ARI ZAVARAS, Executive Director, CDOC,
WARDEN STEVE HARTLEY, LCF,
ASSOCIATE WARDEN TRAVIS TRANI, LCF,
MAJOR RANDY LIND, LCF, and
CASE MANAGER ANTON EVANS, LCF,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendants' **Motion to Dismiss** [Doc. #19, filed 7/2/08] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED and that the Complaint be DISMISSED in its entirety.

**I. STANDARD OF REVIEW**

The plaintiffs are proceeding *pro se*, and I must liberally construe their pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of

Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 u.s. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiffs are currently incarcerated by the Colorado Department of Corrections ("DOC") at the Limon Correctional Facility ("LCF"). They filed their Prisoner Complaint on February 25, 2008 [Doc. #2] (the "Complaint"). The Complaint contains the following allegations:

1. On November 17, 2007, all inmates at LCF were placed on lockdown for an incident that occurred between two alleged Security Threat Groups. *Complaint*, p. 4.

2. The lockdown applied to all inmates for the first ten days. After ten days, certain inmates were allowed to return to work. The plaintiffs were not among the inmates who were allowed to return to work even though their areas of work were operating. Id.

3. The plaintiffs asked the LCF staff why they could not return to work and were told that "they were associates to members of the Prison Motorcycle Brotherhood" ("PMB"), a Security Threat Group, and Security Threat Groups were not allowed to return to work. They were also told that they had received the Security Threat Group classification seven to nine years ago; the classification had been placed in a criminal database for use by all law enforcement

2

personnel; and the classification would be a consideration if they became eligible for parole or community placement. Id.

4. The plaintiffs are not a part of any Security Threat Group. Id.

5. The plaintiffs have not been allowed to review their prison files. Id. at p. 5.

6. The Security Threat Group classification could be used against the plaintiffs "in any criminal proceeding." Id.

The Complaint asserts two claims for relief. Claim One alleges that the plaintiffs were improperly classified as associates to members of a Security Threat Group in violation of the First, Eighth, and Fourteenth Amendments. Id. at pp. 4-4b. Claim Two alleges a due process violation based on the plaintiffs' "right to be advised or/review adverse information contained in prison file." Id. at p. 5. The defendants are sued in their official capacities for injunctive relief and in their individual capacities for nominal, compensatory, and punitive damages. Id. at p. 8.

The defendants seek dismissal of the Complaint on several grounds, including failure to allege personal participation of the defendants and qualified immunity.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

3

The defendants assert that they cannot be held liable for the alleged constitutional violations because the plaintiffs have failed to allege that any of the defendants personally participated in the violations. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiffs summarily describe the personal participation of each of the defendants as follows:

> All Defendants were personally involved. Mr. Zavaras was written directly regarding both subject matters and did not respond. Warden Hartley was written as well and responded. See attached letter. Associate Warden Trani is part of the L.C.F. managment team who made the decision to lock all [Security Threat Group] members down. This is true of Major Lind whom also responded in writing to grievances. See attached. Finally, case manager Evans who is responsible for both of Plaintiff's individual cases, when queried about the situation informed Plaintiff Jenner that "You made the choice to talk to thsoe [sic] people. Hell, I don't even like bikers." All Defendants possess the authority to intervene.

*Complaint*, p. 3(a).

The letter referred to above is addressed to plaintiff Jenner from defendant Hartley. The letter states the following:

> I have received your letter with your concerns about the Lockdown at LCF.
>
> On November 15, 2007, a racial attack that was perpetrated by various Security Threat Groups (STGs) in the facility occurred at LCF. Since then we have been on lockdown. During this time, we have been identifying which STG members are involved and moving them out of the facility. Due to safety concerns, we have not allowed anyone identified as an STG member to go to their work assignment. However, the facility is nearly done with this process and we are slowly returning to normal operations.
>
> As for being identified as an STG member, you say you have grieved it so we will let it go through the grievance process for resolution.

Id. at ninth consecutive attachment [Doc. #2, p. 21 in the Court's docketing system].

The grievance response referred to above is defendant Lind's response to a grievance submitted by plaintiff Jenner. Lind responded to Jenner's grievance as follows:

> Offender Jenner #92839 in reference to your Grievance #LF07/08 354, due to the recent disturbance that occurred at Limon Correctional Facility and the belief of the Colorado Department of Corrections that all security threat group activity creates a clear and present danger to the security of the facility and public order. Administrative heads have been mandated to ensure that the Facility maintains an equal mixture of security threat group members throughout the facility. It is, therefore, the policy of Limon Correctional Facility to prohibit and eliminate any offender's participation in such groups. So until we can accurately identify and meet the mandate to ensure that the facility is safe any offender who has previously been identified as a STG member, Associate or Suspect will remain in their cells with the exception of Day room time. Grievance Denied[.]

Id. at sixth consecutive attachment [Doc. # 2, page 18 in the Court's docketing system].

The Complaint's allegations, the letter from Hartley, and the grievance response from Lind do not support a reasonable inference that any of the defendants were directly responsible for classifying the plaintiffs as associates to members of the Security Threat Group or that they were in any way involved in refusing the plaintiffs' requests to view their files. Nor do they support a reasonable inference that the defendants directly supervised the staff that caused the alleged deprivations. Rather, the plaintiffs provide only conclusory allegations that the defendants are liable for their injuries because they were in positions of authority, they were notified of the plaintiffs' beliefs that they were improperly classified; and they did not correct the classifications. These allegations are not sufficient to impose liability against the defendants. See Davis v. Arkansas Valley Correctional Facility, 99 Fed.Appx. 838, 843 (10th Cir. 2004) (attached) (holding that sending correspondence to an official which outlines complaints about medical care, without more, does not sufficiently implicate the official under section 1983).

In an attempt to refute the defendants' argument that the allegations of the Complaint are insufficient to allege personal participation, the plaintiffs provide the following additional allegations against Jenner's case manager, Mr. Evans:

> Mr. Jenner first contacted Plaintiffs' case manager, Mr. Evans, and asked him to act to get their [Security Threat Group] classification removed. He refused, even though he is directly in charge of classification of each plaintiff. Moreover, during all the classification proceedings, Plaintiffs were never advised that they had been classified as PMB associates, even though it is undisputable that Mr. Evans knew.

*Plaintiff's Response to Motion to Dismiss*, p. 4.

Although these are the most specific allegations made by the plaintiffs with regard to the personal participation of any one defendant, they are insufficient because there are no facts to

support a reasonable inference that Evans was in charge of classifying the plaintiffs at the time they were classified as associates to members of the Prison Motorcycle Brotherhood.

Moreover, these additional allegations are made in response to a motion to dismiss. They are not contained in the Complaint, which is the pleading that is under scrutiny on a motion to dismiss.

"The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted). If the complaint's allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Id. (internal quotations and citation omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Id. This is especially true in cases, like this one, where the defense of qualified immunity has been asserted. Id. at 1248-49.

Here, the plaintiffs have failed to allege sufficient facts to state a plausible claim of relief against the defendants. Accordingly, the Motion should be granted and that the Complaint should be dismissed for failure to state a claim upon which relief can be granted. Dawson v. Johnson, 266 Fed.Appx. 713, 714-16 (10th Cir. 2008) (attached) (upholding the district court's grant of summary judgment in favor of defendants in both their official and individual capacities because the plaintiff had not shown that the defendants personally participated in the alleged constitutional deprivation).

7

## IV. CONCLUSION

I respectfully RECOMMEND that defendants' Motion to Dismiss be GRANTED and that the Complaint be DISMISSED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated December 19, 2008.

BY THE COURT:

*[signature]*
United States Magistrate Judge

Westlaw.

99 Fed.Appx. 838
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.)))**

**C**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)

United States Court of Appeals, Tenth Circuit.
Sylvester DAVIS, Plaintiff-Appellant,
v.
ARKANSAS VALLEY CORRECTIONAL FACILITY; Major Artley, Administrative head; Rick Garcia; Crowley County Correctional Facility; Steve Hargett; Lea Martinez; Grace Nweke, Defendants-Appellees.
**No. 02-1486.**

May 20, 2004.

**Background:** Inmate brought complaint under § 1983, seeking damages for alleged confiscation of legal materials, retaliatory transfer, and denial of reasonable medical care. The United States District Court for the District of Colorado dismissed complaint, and inmate appealed.

**Holdings:** The Court of Appeals, O'Brien, Circuit Judge, held that:
(1) confiscation claim failed to state claim upon which relief could be based;
(2) inmate failed to establish that either named defendant participated in or authorized destruction of his confiscated legal materials;
(3) pre-deprivation process accorded prior to destruction was sufficient;
(4) retaliatory transfer claim failed to state claim upon which relief could be based; and
(5) claim alleging denial of reasonable medical care failed to state claim upon which relief could be based.

Appeal dismissed.

West Headnotes

**[1] Civil Rights 78 €═1395(7)**

78 Civil Rights
 78III Federal Remedies in General
  78k1392 Pleading
   78k1395 Particular Causes of Action
    78k1395(7) k. Prisons and Jails; Probation and Parole. Most Cited Cases
Inmate's § 1983 claim against correctional officials alleging confiscation of legal materials did not state claim upon which relief could be based, where complaint failed altogether to allege that either named official was involved in alleged confiscation. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Civil Rights 78 €═1358**

78 Civil Rights
 78III Federal Remedies in General
  78k1353 Liability of Public Officials
   78k1358 k. Criminal Law Enforcement; Prisons. Most Cited Cases
Inmate failed to establish that either correctional official named as defendant in his § 1983 action actually participated in or authorized destruction of his confiscated legal materials, as required to support claim based upon destruction of such materials; mere fact that one or both named officials might have signed grievance response indicating that inmate's confiscated legal materials were subject to disposal as contraband did not establish that either participated in or authorized destruction of such materials. 42 U.S.C.A. § 1983.

**[3] Constitutional Law 92 €═4824**

92 Constitutional Law
 92XXVII Due Process
  92XXVII(H) Criminal Law
   92XXVII(H)11 Imprisonment and Incidents Thereof
    92k4824 k. Discipline and Classifica-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

99 Fed.Appx. 838
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.)))

Page 2

tion. Most Cited Cases
(Formerly 92k272(2))

**Constitutional Law 92 €═4827**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(H) Criminal Law
         92XXVII(H)11 Imprisonment and Incidents Thereof
            92k4827 k. Access to Courts. Most Cited Cases
(Formerly 92k272(2))

**Prisons 310 €═13(8)**

310 Prisons
   310k13 Custody and Control of Prisoners
      310k13(7) Requisites of Proceedings
         310k13(8) k. Notice and Hearing; Summary Proceedings. Most Cited Cases
Pre-deprivation process accorded to inmate prior to destruction of his confiscated legal materials was sufficient to satisfy constitutional due process requirements, where inmate was informed through grievance process that he could preserve confiscated materials by sending them out of facility, but that otherwise they would be destroyed, and that he was required to appeal underlying disciplinary action in order to contest confiscation, and inmate neither sent materials out of facility nor pursued appeal. U.S.C.A. Const.Amend. 14.

**[4] Civil Rights 78 €═1395(7)**

78 Civil Rights
   78III Federal Remedies in General
      78k1392 Pleading
         78k1395 Particular Causes of Action
            78k1395(7) k. Prisons and Jails; Probation and Parole. Most Cited Cases
Inmate's § 1983 claim against correctional officials for retaliatory transfer failed to state claim upon which relief could be based, where complaint was devoid of specific factual allegations connecting either named official to inmate's transfer. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5] Civil Rights 78 €═1094**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1089 Prisons
         78k1094 k. Access to Courts. Most Cited Cases
Assuming that destruction of inmate's confiscated legal materials implicated his constitutional right of access to the courts, inmate failed to state claim under § 1983 for deprivation of such right, in absence of any showing that destruction of materials at issue hindered inmate in petitioning for post-conviction relief. U.S.C.A. Const.Amend. 6; 42 U.S.C.A. § 1983.

**[6] Civil Rights 78 €═1358**

78 Civil Rights
   78III Federal Remedies in General
      78k1353 Liability of Public Officials
         78k1358 k. Criminal Law Enforcement; Prisons. Most Cited Cases
Inmate's § 1983 claim against warden alleging denial of reasonable medical care failed to state claim upon which relief could be based, where inmate alleged only that he had copied warden on correspondence outlining his complaints about his medical care, and failed to allege or demonstrate affirmative link between any constitutional deprivation and warden's personal participation or failure to supervise. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

*840 Sylvester Davis, # 96327, Crowley County Correctional Facility, Olney Springs, CO, pro se.
Edward T. Farry, Farry and Rector, L.L.P., Colorado Springs, CO, Josh Adam Marks, Melanie Bailey Lewis, Hall & Evans, Denver, CO, for Defendants-Appellees.

Before SEYMOUR, LUCERO, and O'BRIEN, Cir-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

99 Fed.Appx. 838
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.)))

Page 3

cuit Judges.

## ORDER AND JUDGMENT[FN*]

> FN* This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

O'BRIEN, Circuit Judge.

**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Sylvester Davis, a state prisoner, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint [FN1] for failure to state a claim upon which relief can be granted. *See* FED.R.CIV.P. 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we agree Davis fails to state a claim and DISMISS his appeal as frivolous.

> FN1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
>
> 42 U.S.C. § 1983. The operative pleading is Davis' "Final Amended Prisoner's Civil Rights Complaint." (R., Docket Entry 17.)

Davis was incarcerated at the Colorado Department of Corrections' Arkansas Valley Correctional Facility (AVCF) and later at its Crowley County Correctional Facility (Crowley). While incarcerated at AVCF, he ran into disciplinary problems. He alleges as follows. On August 16, 2000, he was typing a paper in the General Library. Officer J. Halpin requested to see the paper. Davis did not comply. Instead, he removed the paper from the typewriter and placed it in a pocket folder with other papers. Halpin confiscated the pocket folder and also a manila envelope.[FN2] In the pocket folder, he found the sheet of paper on which Davis had been typing. It was legal work. The law librarian examined the pocket folder and manila envelope and found a handwritten sheet of paper with another inmate's name on it. At a hearing conducted on September 7, 2000, Davis was charged with disciplinary violations for disobeying a lawful order (found guilty) and possession of unauthorized legal documents (found not guilty).[FN3] The *841 following day, Davis sought return of the confiscated legal materials on the basis he was found not guilty of possession of unauthorized legal documents. On September 13, Halpin informed Davis the seized papers were in the evidence locker in the Receiving/Discharge Department and he could contact that department concerning their retrieval. On October 5, in response to a Step I grievance Davis filed, Officer Steve Hartley informed him legal materials were not permitted in the General Library, and as a result his confiscated paperwork was considered contraband and would be treated as such. He further warned Davis that he had ten days to "mail the items out or have them destroyed." (R. Docket Entry 75, Ex. B.) On October 30, Officer Garcia, responding to a Step II grievance Davis filed, communicated essentially the same information: Davis' confiscated papers were subject to disposition as contraband because legal work was to be done in the Law Library and not in the General Library. Furthermore, the papers contained material concerning another inmate's case, which regulation

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

99 Fed.Appx. 838
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.)))

Page 4

prohibited. Davis did not elect to mail the items out of the facility or authorize their destruction. He claims Officers Hartley and Garcia authorized their destruction on October 30.[FN4] In response to a Step III grievance, again seeking return of his materials, Davis was informed on December 29 that he was required to pursue his claim through an appeal of the disciplinary action that led to the confiscation of his materials, not through the grievance process.

> FN2. Davis claims the confiscated papers were legal materials in aid of seeking post-conviction relief from his criminal conviction. Although the record is unclear as to the particulars of the materials, Davis complains specifically about two items: (1) a statement from one Tina King, and (2) an IOU from him to his co-defendant.

> FN3. Davis was found not guilty of the possession charge because the paper with the other inmate's name on it was legal notes rather than legal documentation. Davis was warned not to possess paperwork with another inmate's name on it.

> FN4. The record is unclear whether the papers were intentionally destroyed, negligently destroyed or merely misplaced. We will assume, without finding, that the papers were intentionally destroyed as contraband pursuant to prison regulation.

**2 In February 2000, Davis was transferred to Crowley. According to his complaint, the medical staff at Crowley discontinued pain medication previously prescribed for him free of charge at AVCF.[FN5] He claims he was required to purchase the medication over-the-counter at the Crowley canteen at a cost he could not afford. He also complains that his $3.00 co-pay for medical visits should cover the cost of his pain medication.

> FN5. The pain medication prescribed by AVCF was for treatment of an allergy-related sinus condition. The medical staff at Crowley prescribed Chlor-Trimeton and directed Davis to obtain pain medication from the canteen.

In his complaint, Davis alleges Hartley and Garcia violated his Fourteenth Amendment right to due process by confiscating and destroying his legal materials and by transferring him to Crowley in retaliation for challenging the confiscation. He also claims they violated the First Amendment by interfering with his right of access to the courts.[FN6] Additionally he alleges Steve Hargett, Warden of Crowley, *842 violated his Eighth Amendment right to reasonable medical care. He seeks $100,000.00 in damages.

> FN6. Although Davis variously characterizes his claims against Hartley and Garcia as violations of the Fifth Amendment (destruction of legal property, deprivation of access to court, retaliatory transfer), Fourteenth Amendment (confiscation and destruction of legal materials), and First and Sixth Amendments (deprivation of access to court), we construe his deprivation of access to court claim to be an alleged violation of the First and Fourteenth Amendments, and all of his remaining allegations to be subsumed in his Fourteenth Amendment claim. *See Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (right of access to courts grounded in First Amendment); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (due process clause protects right of access to courts).

We review *de novo* the district court's dismissal of a complaint under FED.R.CIV.P. 12(b)(6) for failure to state a claim. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999).

"[A]ll well-pleaded factual allegations in the ...

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

99 Fed.Appx. 838
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.)))

Page 5

complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[FN7] A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

> FN7. Exhibits attached to a pleading are considered a part thereof. FED.R.CIV.P. 10(c).

*Id.* (quotations and citation omitted). Although we construe *pro se* pleadings liberally, *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1187 (10th Cir.2003), "[we] will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir.1997). Nor are we "bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbitt,* 14 F.3d 1457, 1465 (10th Cir.1994).

[1][2][3] As to Davis' claims against Hartley and Garcia, Davis has failed altogether to allege either of them was involved in the confiscation of his legal materials. Therefore, the confiscation portion of his claim fails. As to the destruction portion of his claim, he only alleges in conclusory fashion that either Hartley or Garcia was involved in the destruction of his materials. This is insufficient. The mere fact each may have signed a grievance response indicating the confiscated materials were subject to disposal as contraband hardly suffices to establish that either participated in or authorized the destruction of the materials. For this reason, the destruction portion of his claim fails. Even if Davis adequately alleged that Hartley and Garcia intentionally destroyed or authorized the destruction of his legal materials pursuant to prison regulation (*see* n. 4), an act which concededly requires a pre-deprivation hearing in order to comply with due process, *Gillihan v. Shillinger,* 872 F.2d 935, 939-40 (10th Cir.1989), we conclude the pre-deprivation due process accorded to Davis was sufficient. He was informed through the grievance process he could preserve the confiscated materials by sending them out of the facility; otherwise, they would be destroyed. In failing to arrange to send the materials out of the facility, he acceded to their destruction. Furthermore, he was informed he must appeal the underlying disciplinary action in order to contest the confiscation. The record is devoid of any evidence he pursued an appeal.[FN8] Under these circumstances, due process is satisfied.

> FN8. *See Logan,* 455 U.S. at 434 n. 7, 102 S.Ct. 1148 (due process not violated where claimant does not avail himself of hearing procedure).

**\*3** [4][5] Davis' claim that Hartley and Garcia retaliated against him by transferring him to Crowley is, like the confiscation claim, devoid of specific factual allegations connecting either of them to his transfer. Consequently, Davis' retaliation claim fails as well. Finally, while Davis enjoys the fundamental right of access to the courts, *Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), to state a claim for deprivation of this right he must demonstrate an actual injury that "hindered his efforts to pursue a legal claim." *Id.* at 351. He failed to **\*843** demonstrate to the district court how the destruction of his legal materials hindered him in the petitioning for post-conviction relief.

[6] Turning to Davis' claim against Hargett, while it is true that "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment[,]" *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation omitted), it is also true that "a supervisor is not liable under § 1983 for the actions of a subordinate unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise...." *Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir.1996) (quotation omitted). Davis has failed to demonstrate this link. Copying Hargett with correspondence outlining his complaints about medical care, without more, does not

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

99 Fed.Appx. 838
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.)))

sufficiently implicate the warden under § 1983.

We conclude Davis' appeal is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) and DISMISS it.[FN9] We also deny leave to appeal *in forma pauperis* and remind Davis of his obligation to pay in full the filing and docketing fees.

> FN9. Dismissal of Davis' appeal as frivolous counts as a strike against him. 28 U.S.C. § 1915(g). Dismissal by the district court for failure to state a claim also counts as a strike. *Id.* Therefore, he accumulates two strikes as a result of this litigation. *See Jennings v. Natrona County Det. Ctr. Med. Facility*, 175 F.3d 775, 780 (10th Cir.1999) ( "If we dismiss as frivolous the appeal of an action the district court dismissed under 28 U.S.C. § 1915(e)(2)(B), both dismissals count as strikes.").

C.A.10 (Colo.),2004.
Davis v. Arkansas Valley Correctional Facility
99 Fed.Appx. 838, 2004 WL 1119941 (C.A.10 (Colo.))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

266 Fed.Appx. 713 Page 1
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231
(Not Selected for publication in the Federal Reporter)
(Cite as: 266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)))

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)

United States Court of Appeals, Tenth Circuit.
James Ralph DAWSON, Jr., Plaintiff-Appellant,
v.
Shane JOHNSON; John Bowker, Defendants-Appellees.
**No. 07-1116.**

Jan. 8, 2008.

**Background:** Prison inmate sued officials, claiming that he was subjected to discipline in retaliation for his assertion of First Amendment rights to submit grievances regarding prison conditions. The United States District Court for the District of Colorado granted partial summary judgment in favor of defendants, and inmate appealed.

**Holdings:** The Court of Appeals, Terence L. O'Brien, Circuit Judge, held that:
(1) lack of retaliatory motive precluded claim against certain officials;
(2) failure to provide transcript precluded claim that jury instructions were erroneous;
(3) inmate's failure to file motion for judgment as matter of law during course of trial precluded post-trial filing; and
(4) failure to provide transcript precluded claim that certain evidence was improperly admitted.

Affirmed.

See, also, 2007 WL 1670355.

West Headnotes

[1] Prisons 310 €==>13(6)

310 Prisons
  310k13 Custody and Control of Prisoners
    310k13(6) k. Disciplinary, Classification, and Grievance Proceedings; Composition of Tribunal. Most Cited Cases
Lack of retaliatory motive, on part of prison official who prosecuted inmate for offering bribe in return for prison employment, official who supervised proceeding against inmate, and warden who reviewed punitive order, precluded claim that officials acted in retaliation for inmate's exercise of his First Amendment right to submit grievances regarding prison conditions. U.S.C.A. Const.Amend. 1.

[2] Federal Courts 170B €==>694.1

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(G) Record
      170Bk694 Transcript of Proceedings
        170Bk694.1 k. In General. Most Cited Cases
Failure to provide required transcript of proceedings precluded claim by prison inmate that there were erroneous jury instructions in his § 1983 action claiming he was disciplined in retaliation for exercise of his First Amendment rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § **1983**; F.R.A.P.Rule 10(b)(2), 28 U.S.C.A.

[3] Federal Civil Procedure 170A €==>2602

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(E) Notwithstanding Verdict
      170Ak2602 k. Necessity for Motion for Directed Verdict. Most Cited Cases
Inmate's failure to file motion for judgment as matter of law, during course of trial of his civil rights claim against prison and officials, precluded post-trial motion. Fed.Rules Civ.Proc.Rule 50(a)(2), 28 U.S.C.A.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

266 Fed.Appx. 713
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231
(Not Selected for publication in the Federal Reporter)
(Cite as: 266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)))

Page 2

[4] Federal Courts 170B ⇐694.1

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(G) Record
            170Bk694 Transcript of Proceedings
                170Bk694.1 k. In General. Most Cited Cases
Failure to provide required transcript of proceedings precluded claim by prison inmate that evidence of prior convictions was improperly admitted in trial of his § 1983 action claiming he was disciplined in retaliation for exercise of his First Amendment rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

*713 James Ralph Dawson, Jr., Limon, CO, pro se.
Jess Alexander Dance, State of Colorado Department of Law, Nicole Gellar, Colorado State Attorney General, Denver, CO, for Defendants-Appellees.

Before KELLY, MURPHY, and O'BRIEN, Circuit Judges.

*714 ORDER AND JUDGMENT[FN*]

> FN* This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

TERRENCE L. O'BRIEN, Circuit Judge.
**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

James Ralph Dawson, Jr., a state prisoner appearing pro se and *in forma pauperis (ifp)*, appeals from the district court's order granting partial summary judgment in favor of certain defendants.[FN1] He also appeals from various alleged trial errors. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the order of partial summary judgment and dismiss the remainder of Dawson's appeal due to an inadequate record.

> FN1. On account of Dawson's pro se status, we liberally construe his filings, but hold him to the same rules of procedure as other litigants. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994).

I. BACKGROUND

Dawson is incarcerated in the Limon Correctional Facility, which is operated by the Colorado Department of Corrections (CDOC). Dawson filed a pro se complaint under 42 U.S.C. § 1983, alleging he received a prison disciplinary conviction in retaliation for exercising his First Amendment right to file grievances concerning prison conditions. Dawson named as defendants the CDOC and five CDOC employees: associate warden Al Estep and correctional officers John Bowker, Shane Johnson, Endre Samu and Danny Adams (misnamed as Gary Adams). Dawson sought injunctive relief and monetary damages.

Dawson alleged he filed a series of grievances regarding the different privileges afforded to inmates who were employed as compared to inmates who were not employed. He claims that three days after meeting with Estep to discuss the discrepancy, Bowker asked him to write a letter indicating he would drop any grievances and potential lawsuits in exchange for a particular job. Dawson alleges Bowker told him Johnson had instructed Bowker to make this proposal. Dawson wrote the letter and was then charged with a prison infraction-bribery. He was tried by a prison disciplinary board. The hearing was chaired by Samu and Adams acted as the prosecuting officer. Dawson was convicted and sentenced to ten days in punitive segregation. He appealed his conviction internally, and the convic-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

266 Fed.Appx. 713 Page 3
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231
(Not Selected for publication in the Federal Reporter)
(Cite as: 266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)))

tion was affirmed by Estep.

After limited discovery, the defendants filed a motion for partial summary judgment, arguing, *inter alia,* the CDOC was entitled to immunity under the Eleventh Amendment and Samu, Adams and Estep were entitled to summary judgment in their individual capacities because they did not personally participate in the alleged conspiracy to retaliate against Dawson. The motion was referred to a magistrate judge for a report and recommendation (R & R). The magistrate concluded the CDOC was immune under the Eleventh Amendment and Samu, Adams and Estep were entitled to judgment in their individual capacities based on lack of **personal participation**. The magistrate also concluded Samu, Adams and Estep were entitled to Eleventh Amendment immunity in *715 their **official capacities** to the extent Dawson sought monetary damages. Dawson objected to the R & R. In their response to Dawson's objections, the defendants agreed with the magistrate's conclusions and also argued Samu, Adams and Estep were entitled to judgment in their **official capacities** even as to Dawson's request for injunctive relief. They reasoned that because there was no evidence these individuals retaliated against Dawson, there was nothing to enjoin. The court adopted the magistrate's R & R and further concluded Samu, Adams and Estep were entitled to judgment in their **official capacities** as to Dawson's request for injunctive relief.

**2 The matter was then set for trial against Johnson and Bowker. The court granted Dawson's request for appointed counsel, and two attorneys entered their appearances on his behalf. Both Dawson and the defendants filed a motion in limine concerning the admissibility of Dawson's prior convictions.[FN2] Dawson contended the convictions were inadmissible because of their age and were not relevant; the defendants contended they were admissible for purposes of attacking Dawson's credibility. The court heard argument and held the murder and assault convictions were inadmissible but the other convictions were admissible for impeachment. Also prior to trial, Dawson filed a pro se motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The court dismissed Dawson's motion without prejudice, concluding it was premature.

> FN2. Dawson had been convicted of murder, attempted murder, assault, criminal impersonation, forgery, criminal possession of a forged instrument, criminal possession of a credit device, theft and attempted theft. Some of these convictions were over twenty years old.

Trial began on March 12, 2007, and continued for four days. The jury returned a verdict in favor of Johnson and Bowker and judgment was entered on March 16. Dawson filed a pro se notice of appeal and a pro se "renewed" Rule 50(b) motion for judgment as a matter of law. The motion was denied. Dawson then submitted a motion and affidavit for leave to proceed *ifp* on appeal pursuant to 28 U.S.C. § 1915 and Rule 24 of the Federal Rules of Appellate Procedure. The court granted Dawson leave to proceed *ifp* but denied his request for a free transcript. The court stated: "Plaintiff may pay the estimated transcript fee in advance or make his own arrangements with the court reporter to pay for the cost of the transcript." (R. Doc. 176 at 3.)

Appearing pro se in this Court, Dawson contends the district court erred in four respects: (1) by granting summary judgment to Samu, Adams and Estep based on their lack of personal participation in the alleged conspiracy; (2) by improperly instructing the jury; (3) by denying his post-verdict motion for judgment as a matter of law; and (4) by admitting evidence of his prior convictions, some of which were twenty-five years old.

## II. DISCUSSION

A. *Summary Judgment*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

266 Fed.Appx. 713
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231
**(Not Selected for publication in the Federal Reporter)**
(Cite as: 266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)))

Page 4

[1] The district court granted summary judgment in favor of Samu, Adams and Estep because Dawson failed to produce any evidence indicating these defendants were personally involved in the alleged conspiracy to retaliate against him. Dawson contends this was error. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir.1997) (citation omitted). "Summary judgment *716 should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." *Id.*

A defendant cannot be held liable in a § 1983 action unless he or she caused or personally participated in the alleged constitutional violation. *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir.1996). A respondeat superior theory of liability cannot form the basis of a § 1983 claim. *McKee v. Heggy,* 703 F.2d 479, 483 (10th Cir. 1983). To establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers ... would not have taken place." *Smith v. Maschner,* 899 F.2d 940, 949-50 (10th Cir.1990) (quotations omitted). Dawson introduced no evidence to show that, but for a retaliatory motive on the part of Samu, Adams and Estep, he would not have been convicted of bribery.

**3 Dawson was asked, through interrogatories, to identify and describe the facts that supported his claims against Samu, Adams and Estep. As to Samu, Dawson stated: "Endre Samu ... found me guilty of bribery for participating in the prison grievance process. I explained to him that I was exercising a constitutional right to exhaust my prison remedies and petition for grievance and access the courts. Nonetheless, he sent me to [segregation] for 10 days." (R. Doc. 61, Ex. A-2 at 3.) As to Adams, Dawson stated: "Gary Adams ... prosecuted the change of bribery against me. I informed him that I was exercising a constitutional right to exhaust my prison remedies and petition for grievance to access the courts. He then sent me to [segregation] for 10 days." *(Id.)* And as to Estep: "Al Estep initiated the retaliatory conspiracy against me and gave his written explanation of why in his response to my appeal. Mr. Estep specifically states, 'you were charged with bribery because you attempted to exchange dropping grievance/legal action if given a porters job. [T]he filing of frivolous or too may grievances is dealt with in another manner per D.O.C. policy. The charge and decision [were] appropriate.' " *(Id.)*

Even viewing these allegations in the light most favorable to Dawson, they do not establish that Samu, Adams or Estep had a retaliatory motive or personally participated in the alleged conspiracy. Samu's only involvement was that he presided over the disciplinary hearing at which Dawson was convicted. Adams' only involvement was that he investigated the bribery charge and presented facts in support of the charge at the hearing. Estep's only involvement was that he affirmed Dawson's conviction. Estep's statement regarding the filing of grievances was merely an explanation of prison procedure and is not evidence of retaliation. Dawson claims that, because of his supervisory role, Estep was "responsible for knowing everything that transpires in the prison." *(Id.* at 1.) Our case law instructs that a prison official cannot be held liable for all actions that occur at a prison merely because he has general supervisory responsibility. *Mitchell,* 80 F.3d at 1441 ("supervisor status by itself is insufficient to support liability").

Because Dawson produced no evidence that Samu, Adams and Estep participated or acquiesced in the alleged deprivation of his constitutional rights or inadequately trained or supervised the officers who allegedly did (Bowker and Johnson), the district court did not err in granting summary judgment to these defendants. *See McKee,* 703 F.2d at 483 ("defendant Heggy is liable to [plaintiff] only if Mr. Heggy participated or acquiesced in [plaintiff]'s

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

266 Fed.Appx. 713                                                                                                         Page 5
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)))**

deprivation or if he inadequately trained or *717 supervised the officers who did"); *see also Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992) ("supervisor liability [under § 1983] requires allegations of personal direction or of actual knowledge and acquiescence") (quotations omitted).

B. *Jury Instructions*

**\*\*4** [2] Dawson argues the district court improperly instructed the jury and failed to give a requested instruction. Normally, we review a refusal to give an instruction for an abuse of discretion. *Wolfgang v. Mid-Am. Motorsports, Inc.,* 111 F.3d 1515, 1525 (10th Cir.1997). In assessing whether such abuse has occurred, we "examine the instructions as a whole to determine whether they sufficiently cover the issues, facts and evidence in the case." *Id.* at 1526. The ultimate question of whether a jury was properly instructed is a question of law we review de novo. *Id.*

Here, we have no way of reviewing whether the instructions sufficiently cover the issues, facts and evidence because the record on appeal does not include either the trial transcript or the jury instructions. In *Roberts v. Roadway Express, Inc.,* we held we could not consider the appellant's objections to the jury instructions because the "[a]ppellant has provided neither the instructions given to the jury nor a complete record of the proceedings on which those instructions were based." 149 F.3d 1098, 1109 (10th Cir.1998). This holding is equally applicable here.

Pursuant to Rule 10(b)(2) of the Federal Rules of Appellate Procedure, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." The rules of this Circuit similarly provide that "[t]he appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." 10th Cir. R. 10.1(A)(1). The district court specifically denied Dawson's request for a free trial transcript and instructed him to pay the transcript fee in advance or make other arrangements with the court reporter. He failed to do so.[FN3]

> FN3. Dawson also failed to include the proposed and final jury instructions in the record on appeal, in contravention of our rules. *See* 10th Cir. R. 10.3(C)(6) ("Every record on appeal sent to this court must include: ... all jury instructions when an instruction is an issue on appeal, as well as proposed instructions that were refused").

Dawson did not appeal from the district court's denial of his request for a free transcript; nor did he file a motion for a free transcript with this Court. He made no mention of the missing transcript in his opening brief. In his reply brief, however (and without citation to authority to support his request), Dawson "urges the Court to order a complete transcript of his trial...." (Appellant's Reply Br. at 2.) He claims "[t]he defendants are attempting to decieve [sic] the Court in hope that the Court will not require that the trial record be transcribed for a de novo review." *(Id.)* It is not for the Court to order the transcript of the trial; that is the duty of the appellant. *See* Fed. R.App. P. 10(b)(1). Dawson claims the government has misrepresented facts but has not detailed which portions of the trial record deserve transcription or explained (other than in a most general and somewhat conclusory way) what would be revealed. In short, he has not justified his request for a free transcript even if we were to overlook his procedural missteps. We have held "on a number of occasions and in a variety of settings that the lack of a required *718 transcript leaves us with no alternative but to affirm." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.,* 175 F.3d 1221, 1238 (10th Cir.1999) (quotations omitted); *see also United States v. Vasquez,* 985 F.2d 491, 494 (10th Cir.1993) ("When the record on appeal

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

266 Fed.Appx. 713                                                                                                         Page 6
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)))**

fails to include copies of the documents necessary to decide an issue on appeal, the Court of Appeals is unable to rule on that issue."). "An appellant's failure to provide a necessary transcript entails more than mere noncompliance with some useful but nonessential procedural admonition; it raises an effective barrier to informed, substantive appellate review." *Morrison Knudsen Corp.,* 175 F.3d at 1238 (quotations omitted).

*C. Judgment as a Matter of Law*

**\*\*5** [3] Dawson claims the court erred in denying his post-verdict motion for judgment as a matter of law pursuant to Rule 50(b). Generally, we review a district court's decision on a motion for judgment as a matter of law de novo, applying the same legal standard as the trial court. *EEOC v. Heartway Corp.,* 466 F.3d 1156, 1160 (10th Cir.2006). Because Dawson failed to include the trial transcript in the record on appeal, we have no means of evaluating the adequacy of the evidence presented. Dawson has thus waived his claim concerning the sufficiency of the evidence. *See Vasquez,* 985 F.2d at 495 ("By failing to file a copy of the trial transcript as part of the record on appeal, the appellant waives any claims concerning the sufficiency of the evidence at trial.").

Even if we were to consider Dawson's Rule 50(b) motion in the absence of an adequate record, the motion was properly denied because it was not preceded by a proper Rule 50(a) motion. A "pre-verdict Rule 50(a) motion" is "a prerequisite to a post-verdict motion under Rule 50(b)." *Marshall,* 474 F.3d at 738. The motion Dawson filed before trial had commenced was not a proper Rule 50(a) motion. *See*Fed.R.Civ.P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time [during trial] before the case is submitted to the jury.") Thus, regardless of what the trial transcript were to reveal, the denial of Dawson's Rule 50(b) motion was not error.

*D. Admission of Prior Convictions*

[4] Dawson's final contention of error suffers from the same infirmity. While we generally review a trial court's decision to admit or exclude evidence for an abuse of discretion, *United States v. McConnel,* 464 F.3d 1152, 1162 (10th Cir.2006), *cert. denied,* --- U.S. ----, 127 S.Ct. 2085, 167 L.Ed.2d 803 (2007), we will not do so here because Dawson failed to include the transcripts of the trial and the hearing where the court heard argument on the motions in limine and made its ruling. "An appellant who provides an inadequate record does so at his peril." *Dikeman v. Nat'l Educators, Inc.,* 81 F.3d 949, 955 (10th Cir.1996). "The failure to file a transcript ... precludes review of the trial court's evidentiary rulings. Challenges to the admission of evidence will not be considered by the Court of Appeals in the absence of a record containing those portions of the transcript on which the appellant relies." *Vasquez,* 985 F.2d at 495.

We **AFFIRM** the grant of summary judgment and **DISMISS** the remainder of Dawson's appeal.

C.A.10 (Colo.),2008.
Dawson v. Johnson
266 Fed.Appx. 713, 2008 WL 77962 (C.A.10 (Colo.)), 69 Fed.R.Serv.3d 1231

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.